UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GREEN HILLS MALL TRG LLC, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | NO. 3:14-cv-01675 |
| ) | JUDGE CRENSHAW |
| BAKERSOUTH, LLC, ) | |
| ) | |
| DEFENDANT. ) | |

**MEMORANDUM OPINION**

Plaintiff Green Hills Mall TRG LLC ("GHM") filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, asking the Court to declare that BakerSouth, LLC ("BakerSouth"), does not own in fee simple certain property or own an easement on GHM's property. Before the Court are the parties' cross-motions for summary judgment. (Docs. No. 23, 31.) For the following reasons, GHM's motion for summary judgment (Doc. No. 23) is **granted**. BakerSouth's motion for summary judgment (Doc. No. 31) is **denied**.

I. UNDISPUTED FACTS

The property in dispute involve lots nine, ten, eleven, and twelve on the Plan of Hillsboro Views Development Company's Subdivision as of record in Book 974, pages sixty-four and sixty-five of the Register's Office of Davidson County, Tennessee. (Doc. No. 1 at 5.) In the 1950s, Green Hills Village, Inc., acquired all four lots.[1] (Doc. No. 26-10 at 4-5.) On March 31, 1966, Green Hills Village, Inc., conveyed lots nine, the easterly fifty feet of lot ten ("lot ten east"), and a free parking easement to the westerly fifty feet of lot ten ("lot ten west"), all of lot eleven, and the westerly fifty

---
[1] At some point, Green Hills Village, Inc., dissolved, and GHM took control of any interest that Green Hills Mall, Inc., had in the four lots. (Doc. No. 26-10 at 20; Doc. No. 31 at 2.)

feet of lot twelve ("lot twelve west") (the "free parking easement") to Harlan Dodson, "his successors and assigns," as trustee. (Doc. No. 26-2 at 2, 6.) This conveyance came "with full power to sell, transfer and convey without the joinder of any beneficiary or disclosure of the terms of any trust . . . ." (Id. at 2.)

On May 27, 1966, Dodson conveyed lot nine east to the Metropolitan Government of Nashville and Davidson County ("Metro") to build a public street or road. (Doc. No. 26-3 at 2.) He conveyed lots nine west and ten east to Metro for the purposes of constructing, maintaining, and operating a branch of a public library (the "library property"). (Id.). He also granted Metro the free parking easement for those using the library. (Id. at 3.) The conveyance explicitly stated that if Metro stopped operating a public library in this location, the property would revert to Dodson, "his successors and assigns," and the easement would terminate. (Id.). On February 22, 1986, Dodson died. (Doc. No. 33 at 2.)

After Dodson died, Metro stopped using the library property for a public library branch. (Doc. No. 26-10 at 14.) Dodson's Last Will and Testament made no mention of the disputed property. (Id. at 12, Doc. No. 31-2.) On April 3, 2009, Dodson's wife, Virginia S. Dodson, also died. (Id. at 12.) The Dodsons were survived by three children: Kember Harlan Dodson III, Virginia Marie Dodson Maxwell, and John Christopher Dodson ("the Dodson children"). (Id.).

On July 21, 2010, the Dodson children, their spouses, and the Chris Dodson Family Trust conveyed in a Quitclaim Deed their right, title, and interest in lots nine, ten, eleven, and the easterly fifty feet of lot twelve to Thomas V. White as trustee (the "Dodson Children Deed"). (Doc. No. 26-2 at 2, 9.) The deed states that this is the same property Harlan Dodson previously conveyed to Metro, but reverted to Dodson as trustee. (Id.). It further states that Harlan Dodson is now deceased and the Dodson children are the heirs of Dodson. (Id.).

On May 23, 2013, White conveyed to BakerSouth by a Special Warranty Deed the library property. (Doc. No. 26-4 at 2, 5.) In the same deed, he also included the free parking easement. (Id. At 5.)

Also on May 23, 2013, White conveyed to BakerSouth by a Quitclaim Deed the library property. (Doc. No. 26-5 at 2, 4.) In the same deed, he also included the free parking easement. (Id. At 4.)

On May 20, 2014, Metro conveyed to White by quitclaim deed the library property. (Doc. No. 26-7 at 2, 4.) It also included the free parking easement. (Id.).

II.     PROCEDURAL HISTORY

On July 9, 2015, BakerSouth sent GHM a cease and desist letter, informing GHM that it had acquired the library property and the free parking easement. (Doc. No. 26-11 at 2.) It insisted that GHM stop using the area of BakerSouth's parking easement for the mall's valet parking. (Id.). On November 15, 2015, BakerSouth sent a letter to the Taubman Company asking it to notify the mall's valet parking vendor of BakerSouth's easement "so that the common use of the parking lot by our tenant can be coordinated." (Doc. No. 26-12 at 2.)

On August 14, 2014, GHM filed the complaint against BakerSouth in this matter asking the Court to "determine the respective rights of the parties to Lots 9, 10, 11, and 12 . . . ." (Doc. No. 1 at 10.) After Judge Nixon denied BakerSouth's motion to dismiss for failure to include all indispensable parties (Doc. No. 21), GHM filed the instant motion for summary judgment. (Doc. No. 23.) On December 11, 2015, BakerSouth filed the instant cross-motion for summary judgment. (Doc. No. 31.)

III. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A motion for summary judgment requires that the Court view the "inferences to be drawn from the underlying facts . . . in light most favorable to the party opposing the motion." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). The opponent, however, has the burden of showing that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial'" Matsushita, 475 U.S. at 587. "The mere existence of a scintilla of evidence in support of plaintiff's position, however,] will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 479-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

IV. ANALYSIS

GHM's asks the Court to find that BakerSouth owns "no interest in the parking easement over the lots that GHM owns in fee simple." (Doc. No. 23 at 2.) BakerSouth does not dispute that GHM owns the fee simple title to lot eleven and lot twelve east. (Doc. No. 31 at 2.) It asks the Court to find that it owns in fee simple lots nine west and ten east, and that it owns a parking easement to lot eleven and lot twelve east. (Doc. No. 31 at 5.)

4

A. THE PARKING EASEMENT

GHM argues that BakerSouth does not have a right to the free parking easement. It contends that the 1966 Deed conveyed the parking lots in question to Harlan Dodson "as Trustee." (Doc. No. 24 at 11.) It claims that the easement automatically reverted to Trustee Dodson in the event that Metro stopped using the property for the maintenance and operation of a public library branch. (*Id.* at 12.) According to GHM, when Metro stopped using the property for a public library branch, the easement reverted and re-vested in Trustee Dodson, "his successors and assigns." (*Id.*). GHM asserts that Dodson's children were not trustees or assigns, and therefore they did not have authority to transfer the parking easement to White. (*Id.* At 13.) It concludes that White did not have authority to transfer the parking easement to BakerSouth. (*Id.*).

BakerSouth argues that when the parking easement reverted from Metro, it reverted to Dodson's heirs. (Doc. No. 32 at 9.) It claims that the common law rule in Watkins v. Sprecht, 47 Tenn. 585, 595 (1870), holds that the title to the property is vested in the heirs of the trustee unless or until a successor trustee is appointed. (*Id.*). Under this theory, BakerSouth asserts that the Dodson children validly conveyed the parking easement to White. (*Id.* at 10.) White then validly conveyed the former the parking easement to BakerSouth. (*Id.*).

The preliminary issue in this case is whether, under Tennessee law, when a trustee dies, the heirs of the trustee hold the place as trustee unless and until a successor to the trustee is appointed. If the heirs do, the next question is whether the heirs have the right to convey the property held in trust. As the material facts in this case are undisputed and the issues presented are legal in nature, summary judgment is appropriate in this case.

Both parties agree that when a trustee dies, the trusteeship remains vacant until a successor is appointed. TENN. CODE ANN. § 35-15-704 (2007). A vacancy can be filled by: (1) a person

5

designated in the terms of the trust to act as successor trustee; (2) by a person appointed by unanimous agreement of the qualified beneficiaries; or (3) a person appointed by the court. Id. at (c). When a trustee is removed, the trustee still has the duties and powers necessary to protect the trust property. TENN. CODE ANN. § 35-15-707(a) (2007). The removed trustee must, "within a reasonable time, deliver the trust property within the trustee's possession to the cotrustee, successor trustee, or other person entitled to it." Id. at (b). When a trustee dies, the trustee's personal representative is not required to windup or complete the former trustee's administration. Comments to TENN. CODE ANN. § 35-15-707 (2013).

Both parties agree that Dodson did not appoint a successor trustee, and a trustee was never appointed after the death of Dodson. Instead, the question is whether, when a trustee of real property dies, the title to that property is vested in the heirs of the trustee unless or until a successor trustee is appointed.

Bare naked title passes to the heirs of the trustee when the trustee dies. Williamson v. Wickersham, 43 Tenn. 52, 55 (1866).[2] When the trustee dies, the title cannot remain in the trustee or remain in abeyance. Id. Because the deed giving the easement to Dodson as trustee said it was forever, the purpose of the trust has not been satisfied, so the easement could not have reverted to the original grantor, or passed to the beneficiary. Id. Therefore, it must have passed to the heirs of the Dodson, "subject to be divested on the appointment of his successor." Id.

In this case, a new trustee must be appointed by the court. The trust did not specify a successor trustee, and neither party argues that the qualified beneficiaries unanimously agreed to a successor trustee.[3] As such, the heirs were required, "within a reasonable time, [to] deliver the

---

[2] Williamson is more on point to this case than Watkins because it does not rely on the construction of the particular deed in question.
[3] It is unclear who the beneficiaries are in this case.

6

trust property within the trustee's possession to the . . . person entitled to it." Tenn. Code Ann. § 35-15-707(b). Since the state court must determine the person entitled to the easement, the heirs were required to deliver the free parking easement to the court. They did not do so, but instead they sold the free parking easement to White, as trustee. As they did not have the power under state law to sell the easement to White as trustee, that sale was not valid. Therefore, White also was not entitled to sell the easement to BakerSouth, and BakerSouth does not own the free parking easement.

B. THE LIBRARY PROPERTY

In its cross-motion for summary judgment, BakerSouth asks the Court to declare that it owns the library property. (Doc. No. 32 at 11.) GHM does not respond to this argument, nor does it appear to claim any interest in this property. (See Doc. No. 1, 32 (not claiming to own lots nine west or ten east)). As a result, there does not appear to be a case or controversy regarding the ownership of this property between these two parties.[4] (See Doc. No. 21 at 4 ("[T]he Court can provide complete relief among the existing parties without the joinder of the other potential owners of the BakerSouth lots . . . ."). Absent a case or controversy, the Court lacks jurisdiction to decide who has the rights to the library property. Valley Forge Christian College v. Ams. United for Separation of Church and State, 454 U.S. 464, 471 (1982). Therefore, the Court must dismiss this claim without prejudice so that BakerSouth may file an action against a party that disputes its claim to these lots.

---

[4] In Judge Nixon's order denying BakerSouth's motion to dismiss (Doc. No. 21), he limited the scope of the case to the property disputes between these two parties. (Id. at 4-5 ("The prospect of future litigation between a named party and an absent party is insufficient to make the absent party necessary where, as here, the prospect of future litigation is purely speculative.").

V. CONCLUSION

For the foregoing reasons, GHM's motion for summary judgment (Doc. No. 23) is **GRANTED**. BakerSouth's motion for summary judgment (Doc. No. 31) is **DENIED**. BakerSouth's claim to own lots nine west and ten east are **DISMISSED WITHOUT PREJUDICE**. The parties did not brief their requests for attorney's fees, so GHM's request for attorney's fees is **DENIED WITHOUT PREJUDICE** to it filing an appropriate motion.

The Court will file an accompanying order.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE